# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS



FILED

APR 15 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| United States of America | ) | |
| Appellee | ) | |
| Vs | ) | Case No. 17-cr-581 |
| | ) | |
| Klint Kelley | ) | Judge Ronald Guzman |
| | ) | |
| Appellant | | |

## MOTION FOR EXTRAORDINARY AND COMPELLING

COMES NOW, Klint Kelley by filing in Pro se, respectfully moves this court, under 18 U.S.C. 3582(c)(1)(A) in wake of the First Step Act, relief to release Mr. Kelley from his confinement at USP Atlanta from the due cause that Kelley has contracted the COVID-19 on two different occasions from his weakened immune system and also that his chronic underlying medical conditions that render him the most vulnerable to contract the COVID-19 again which is further described infra and Mr, Kelley fears of contracting this virus from his confinement area in such close quarters that the transmission of this contagious disease, showing that conditions of confinement create an ideal environment for contracting the virus. **EXHIBIT 1**

There is today of (3) three new hybrid coronavirus that has caused and another "Nationwide public health emergency that there is no vaccine that guards against the new virus. The CDC has spoken on these hybrids causing death for the individuals that have contracted

the virus.   South Bay United Pentecostal Church Vs, Newsom 140
S. Ct 1613(2020) (Roberts, CJ, concurring)  According to the CDC
[t[he best way to prevent this illness is to avoid being exposed
to the virus.

   Mr, Kelley seeks relief directly from this court after exausting
his correspondence resulting a denial
administrative appeal for compassionate release are attached to
his motion as **EXHIBIT  TWO**

   Mr, Kelley respectfully makes this request that this court
modify his imprisonment to time served with or without the special
conditions that balance on his probation (supervised release)
Mr, Kelley has provided this court his safety plan, release plan
showing that Mr Kelley would be living in his home located at
6705 U.S. 270 Malvern Arakansas 72104  and further states that
he intends to live with the mother (Ashley Bates) of their first
child Kyndall Kelley (2 years old), she will arrange for his transpora-
tion, further will provide an environment that substantially reduce
any risk of recidivism beyond that which has been stated. Mr. Kelley
respectfully request that this court grant his motion and submits
his memorandum in support.   SEE: EXHIBIT ONE

   Mr, Kelley has suffered through two differnt occasions
from the COVID-19 and his medical records surport and have confirmed.
https:llwww.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions. html

   Mr, Kelley's physical ailiments that constitues an extra-
ordinary and compelling reasons for a sentence for time served
under 18 U.S.C. 3582(c)(1)(A) [.] Accordingly, on December 21, 2018
the first Step Act was signed into Law and among the criminal

justice reforms Congress amended 18 U.S.C.(c)(1)(A) to provide
the sentencing court jurisdiction to consider a defendants motion
for a reduction of his sentence under the subsection when a defendant
has exhausted all administraive remedies seeking relief release
through the BOP.

## FACTUAL BACKGROUND

In the underlying offense  giving rise to this motion Mr, Kelley
pleaded guilty to 18 U.S.C. 922(a)(1)(A) unlawfully engaging  in
the business of dealing firearms 09/03/2017 and 924(a)(1)(D) count 3
18 U.S.C. 922(d)(1) and 924(a)(2) selling a firearm to a convicted
felon, date of Imposition of judgment July 18, 2018 Mr, Kelley
accepting his responsibly toward this charges.

Mr, Kelley is presently confined at USP Atlanta a medium-
security facility in Atlanta Georgia. Based, _ is in prison Mr, Kelley
faces a substantial risk of exposure and transmission of the COVID-19
from his weakened immune system further, faces a sever risk of death
should he contract the COVID-19 again (medical records with summary)
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html

## ADMINISTRATIVE PROCESS

Pursuant to the First Step Act procedures, Mr, Kelley requested
a reduction in his sentence based on his chronic and severe health
conditions with the bureau of Prisons          but this request
for compassionate release was also rejected BOP memorandum from
Warden William L.  Woods,  This memorandum  indicated that Mr,
Kelley had no further need to contact with the BOP regarding his
request as his request had been denied.

## ARGUMENT AND CITATION OF AUTHORITY

Mr, Kelley respectfully request this compassionate release because he meets the First Step Act criteria. Mr, Kelley has suffered through two occasions where he had contracted this virus twice from his weaken immune system, and faces a risk that he could be facing another.

In contrast to previous compassionate release procedures, the First Step Act permits District Courts to grant compassionate releases for prisoners without first hearing a motion from the Bureau of Prisons for resentencing. 18 U.S.C. 3582(c)(1)(A)(i) Instead, the District Court may re-sentence prisoners to time served under 18 U.S.C. 3582 for extraordinary and compelling reasons, so long as those reasons are consistent with applicable with policy statements issued by the Sentencing Commission. 18 U.S.C. 3553(a). These reasons include medical emergencies, family concerns,or a variety of other concerns. U.S.S.G. 1B1.13 application note 1(A)

The First Step Act provides the sentencing court jurisdiction to consider a defendant's motion for reduction or modification of a sentence when the defendant has fully exhausted all administrative remedies or the lapse of 30days from the receipt of such a request by the Warden of the defendants facility,whichever is earlier.

This court has general authority over sentencing considerations outlined in the First Step Act and Federal Sentencing guidelines therefore, the grave immediacy of Mr, Kelley's need for relief to avoid contracting COVID-19 is sufficient for the court to enter relief now that Mr, Kelley has exhausted his administrative remedies.

**The First Step Act(FSA) permits reduction to time served with balance served in supervised home release when "extraordinary and compelling reasons exist.**

The FSA's compassionate release provision grants the sentencing court the power to reduce a prisoner's sentence when "extraordinary and compelling reasons warrant a reduction." The statute reads in pertinent part:

(A)... the court, upon motion of the Director of Bureau of prisons or motion of the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendants behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendants facility, whichever is earlier...if it finds that-- (i)extraordinary and compelling reasons warrant such a reduction...

18 U.S.C.3582(C)(1)(A)(i) The court has such power whenever the Director of the Bureau of Prisons makes the motion, denies a defendants request, or "the lapse of 30 days from the receipt of[a] request by the Warden of the defendants facility....

(i) . Mr, Kelley has exhausted his administrative remedies.

As stated above, Mr, Kelley has pursued and exhausted his administrative remedies as shown by his correspondence with the BOP and its subsequent response, denying him relief. Therefore, the threshold issue of exhaustion required by 18 U.S.C. 3582(c)(1)(A) has been met. Correspondence to and from Warden Woods.

( ii )`A reduction of sentence to home confinement is warranted in this case because of the extraordinary and compelling reasons related to Mr, Kelley's risk of exposure and death from COVID-19

Although Congress did not define what constitute an extraordinary and compelling reason warranting a reduction of a sentence under 3582(c) the legislative history confirms that this Language to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis and to reduce fundamentally unfair sentences where such reasons exist. Following the First Step Act's passage, courts have held that the district courts are vested with discretion to find "extraordinary and compelling reasons¶ for a reduction in sentence that go beyond the technical requirements outlined in  BOP regulations and using U.S.S.G. 1B1.13, application note 1 (setting forth such "extraordinary and compelling reasons" as a prisoner. While the old policy statement provides helpful guidance, does not ·· constrain the court's independent assessment of whether extraordinary and compelling reasons that warrant a sentence reduction under  3582(c)(1)(A)(i)

Congress expressly delegated these considerations to the District Court through several acts affecting the role of parole offices and the District Courts in post-sentencing reviews. As a precursor to the First Step Act, Congress;s initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system. With the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for

Page 6

an alternative review process. Therefore, it allowed for judicial
reduction of certain sentences under 3582(c)

The Committee believes that there may be unusal cases in
which  an eventual reduction in the length of a term of imprisonment
is justified by changed circumstances. These would include cases
of severe illness, cases in which other extraordinary and compelling
circumstances justify a reduction of an unusually long sentence,
and some cases in which the sentencing guidelines for the offense
of which the defendant was convicted have been later amended to
provide a shorter term of imprisonment.

The situations listed in 3582(c) were thus intended to serve
as "safety valves for modification of sentences" enabling sentence
reductions like the one requested here when justified by factors
that previously could have been addressed through the (now abolished)
parole system. This approach was intended to keep "the sentencing
power in the judiciary where it belongs" rather than with a federal
parole board, and permitted "later review of sentences in particularly
compelling situations.  Notably, Congress imposed no limitations
on courts authority to make such determinations, declining to define
what constitutes extraordinary and compelling reasons or otherwise
constraining judges discretion. The mandate was simple: if extra-
ordinary and compelling circumstances were present, they would "justify
a reduction.

Since the beginning of the year, COVID-19 has spread throughout
the  United States, infecting thousands and inflicting many with
severe respiratory illness and even causing many Americans to die.

Page 7

Mr, Kelley has took it upon himself to isolate himself in his cell area away from the other inmate population, but these measures are inadequate to account for the risk of death if he were to contract the COVID-19 again, (third time) Mr, Kelley faces a substantial risk that can be avoided by this court placing him within the home in his release plan. proposes herein, under his compassionate release procedures, the First Step Act permits a District Court to grant a compassionate release for prisoners without first hearing a motion from the Bureau of Prisons for resentencing

Defendant accepted his responsibility pursuant to rule 11(c)(1)(A) Federal Rules of Criminal Procedures, with regard to determining defendants criminal history, points and criminal history based on facts known to the government at his sentencing,defendants criminal history points equaled zero and was in category I (one) The relevant facts and case law being / directs this court to consider Mr,Kelleys medical needs concurrence with the above calculations that Mr, Kelley is not a career offender which facts known that this offence is his first time ever beening charged and this court should have knowledge the nature. This court will conclude that Mr, Kelley is not any danger to the safety of any other person[s] or the community that is consistent with the First Step Act. December 21, 2018 Pub. L. No.115-391,132 Stat. 5194  Relief under 3582(c)(1)(A) In the wake of the First Step Act.

On March 11 2020, the World Health Organization described the age and older and those with pre-existing comorbidities.

Jurisdictions around the country have begun releasing prisoners susceptible to COVID-19 exposure with an appreciation to practice social distancing or isolation in a jail setting and that the pandemic will be devastating when it reaches prison populations. On March18 2020 In United States Vs, Stephens, 15-cr-95(AJN)(S.D.N.Y Mar.18 2020) Judge Alison J.Nathan granted the defendant;s emergency motion for reconsideration of denial of bail and ordered the defendant released with conditions. Judge Nathan noted that, since the initial hearing, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent" and that while there is not yet a known outbreak among the jail and prisons populations Inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop. citing Joseph A. Bick, Infection control in Jails and prisons, 45 Clinical Infectious Diseases 1047,(Oct, 2))&) ---- Nathan noted that [t]he magnitude of this risk has grown exponentially since the prior hearing, before this court: at the end of the day on March 6, New York State  had 44 confirmed cases of COVID-19, but that by the end of the day on March 18. that number had  climbed to 2,382. In her order, Judge Nathan also cited a recent bail deter- mination in the Eastern District of New York, United States Vs, Raihan, 20-cr-68 (BMC)(E.D.N.Y. march 12,2020) where judge Brian M. Cogan order a defendant released on bail in part because [t]he more people we crowd into [the MCC] the more we're increasing the risk to the community.

As of October 27,2020, over 43 million people Worldwide have been infected with COVID-19 leading to over 1,161,311 deaths. The CDC has issued guidance for COVID-19 in  jails and prisons, including wearing masks, social distancing, and other measures that are virtually impossible to practice in a correctional setting. As of today in the United States there are over 500,000.000 people  that have died from this deadly virus. Conditions of confinement create the ideal environment for the transmission of this contagious disease. Inmates cycle in and out of facilities from all over the country and people who work in the facilities leave and return daily. "Incarcerated/ detained persons live, work, eat, study, and recreate congregate environments, heightening the potential for COVID-19 to spread once introduced. THe CDC recognizes the difficulty of preventing the introduction of COVID-19 into detention facilities.

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff ingress: transfer of incarcerated/detained persons between facilities and systems, to court appearances; and to outside medical visits, and visits from family, legal representatives and other community members. Some settings particularly jails and detention centers, have high turn over, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.

Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious diseases in jails and prisons. Hand sanitizer  an effective disinfectant recommended by the CDC to reduce transmission rates is contraband in jails and prisons because of its alcohol content, Additionally, incarcerated people tend to be in poorer health than the general population. According to public health experts, incarcerated individuals "are at special risk of infection" given their living situations and may also be less able to participate in proactive measures to keep themselves safe, infection control is challenging in these settings, Outbreaks of the flu regularly

occur in jails and during the H1N1 epidemic in 2009 many jails and prisons dealt with high numbers of cases.

As a result of the threat COVID-19 poses to inmates in the United States, [j]ails in California New York, Ohio, Texas and at least a dozen other states are sending....elderly or sickly inmates home early to prevent a coronavirus outbreak in crowded jails and prisons, In March, Attorney General William Barr directed the Director of the Bureau of prisons to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic....

In addition to guidance regarding prisons the CDC has issued guidance that individuals at higher risk of contracting COVID-19 people with chronic medical conditions , take immediate actions including avoiding crowded areas and staying home as much as possible.

In sum,Mr,Kelley stands with the fear of contracting this virus again with significant medical issues from the prior COVID-19 that is the issue for this court to consider, squarely within his confined area at this facility.

(iii) **A reduction in sentence is warranted considering the other sentencing factors**

In determining whether Mr, Kelley's sentence should be reduced, this court must decide, inter alia, whether Mr, Kelley presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C.3142(g) and U.S.S.G. 1B1.13(2) If he does not, the court should then look to the factors outlined in 18 U.S.C. 3553(a) All these factors weigh strongly in favor of release in this case.

Although Mr, Kelley was charged with 18 U.S.C. 922(a)(1)(A) and 924 (a)(1)(D) Unlawfully Engaging in the Business of Dealing Firearms, Mr, Kelley does not present any danger to any person or the community based on the PSI report and also this court has in front of him personal letters from family and community people that he is a minimal for any serious danger toward the community. The punishment he has received is sufficient to deter any further incarceration is not needed, the punishment he has received is sufficient to deter any future misconduct; and , , a release of a medically compromised man during the peak of the global epidemic will not encourage future criminals or encourage recidivism on his part.

### The Exceptional Circumstances Presented by the COVID-19 Pandemic Have Led Courts Around the Country to take Extraordinary Action

Both the 7th and many other District Courts have recognized the deadly nature of COVID-19 and have taken measures to prevent transmission of this deadly virus, restricting access to facilities imposing requirements for entry into the facility, including the wearing of masks, and suspending the requirement of paper filings "OF course" those emergency measures are taken out of concern for the safety of the judiciary, public, and members of the Bar. But they also reflect the need for protection for those the justice system serves.

### Decisions from Courts Throughout the United States reflect the Sever Threat of Covid-19

In addition to the seven Circuit (7th Cir.) courts around the the country in recognition of the serious risk presented by the COVID-19 pandemic, have granted compassionate release related to COVID-19 and the threat of underlying conditions such as heart disease diabetes, pulmonary disease, and other co-morbidities, United States Vs, Asher No: 1:09-CR-414-MHC-1 Doc 184 at 2 (N.D. Ga, June 15 2020) (chronic heart disease, hypertension, United States Vs, Ullings 2020 WL 2394096, at 1 (N.D. Ga, May 12 2020) United States Vs, Burke 2020 WL 3000330 at *2 (D. Neb. June 4 2020) United States Vs, Gray 2020 WL 2932838 at *3 (D. Md. June 3 2020)coronary artery disease, diabetes) United States Vs, Torres 2020 WL 2815003 at *11 (S.D.N.Y June 1 2020) (history of stroke,diabetes, United States Vs, Somerville 2020 WL 2781585 at *6 (W.D. Pa. may 29 2020)(hypertension, chronic bronchitis and asthma) United States Vs, Bass 2020 WL 2831851 at *7 (N.D.N.Y. May 27 2020)(stroke) United States Vs, Lewellen 2020 WL 2615762 at *4(N.D.ILL. May 22 2020) United States Vs, White 2020 WL 2557077 at *1 (E.D. May 20 2020) United States Vs, Copeland 2020 WL 2537250 at *2 (E.D,N.Y. May 19 2020)(hypertension, hyperlipidemia risk of stroke, and age) United States Vs, Johnson Wl 3041923 *10 (D.D.C. May18 2020) United States Vs, Anderson 2020 WL 2521513 at *5(C.D.ILL.May 18 2020) United States Vs, Foreman 2020 WL 2315908 at *2-4 (D. Conn. May 11 2020) United States Vs, Jenkins, 2020 WL 2466911 at *6-7 (D. Colo May 8 2020)(history of stroke, obesity) United States Vs, Scparta No. 1:18-cr-00578-AJN-1 2020 WL 1910481 (S.D.N.Y. April 20 2020) United States Vs, Gileno No. 3:19-cr-161-(VAB)-1 2020 Wl 1904666 (D.Conn. April 17 2020) United States Vs, Joling No.6:15 -cr-00113-AA-1 2020 WL 1903280(D.Or. April 17 2020

(iii)   **Exceptional Circumstances Warrant Mr, Kelley's Release**

This Court should release Mr, Kelley because "there are exceptional reasons why his detention would not be appropriate. 18 U.S.C. 3145(c) United States Vs, Roeder 807 Fed. Appx.157,159 (3rd. Cir.2020) (reversing district court's denial of unopposed motion and extending surrender date) Which Mr, Kelley's today has experience the COVID-19 twice and which he does not want to be the subject to this again.


**CONCLUSION**

With the passage of the First Step Act Congress emphasized the imperative of reducing unnessary incarceration and avoid unduly punitive sentences that do not serve the ends of justice. United States Vs, Simons 2019 WL 170840 at *8 (E.D.N.Y April 22,2019)

Mr, Kelley ask this court to consider and with two exceptions.
Mr, Kelley submits to this court that (he) had made a mistake,
which, Mr, Kelley's Life has been suspended for his actions, Further
for this courts attention that Mr, Kelley had accepted  his responsi-
bility pursuant to Rule 11(c)(1)(A)    number two
Mr,Kelley has a two year old daughter at home that needs his surport
and his comfort, ALSO, to relieve his future wife to be (read
personal letters) also will urge this court to depart with a time
served from the information that has been stated within his motion
for a compassionate release.

4-5-21

Klint Kelley Reg.No. 52091-424
U.S.P. Alanta
P.O. Box  150160
Atlanta, Ga,    30315

EXHIBIT one

Medical Records

Nichols Institute, Chantilly

PATIENT INFORMATION
**KELLEY,KLINT**

DOB: 09/13/1989    Age: 30Y
SEX: M

SPECIMEN INFORMATION
SPECIMEN:    CH0643060
REQUISITION: 0000686
LAB REF NO:  8470000686

ID: 52091-424
PHONE: 318 7654400

COLLECTED:   09/01/2020    00:00
RECEIVED:    09/02/2020    17:41
REPORTED:    09/03/2020    11:09

REPORT STATUS   **Final**

ORDERING PHYSICIAN
**MITCHELL**
CLIENT INFORMATION
847
FCI - POLLOCK - POM

1000 AIRBASE RD
POLLOCK, LA 71467

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| SARS CoV 2 RNA(COVID 19), QL NAAT | | | | AMD |
|    SARS CoV 2 RNA(COVID 19), QL NAAT | | | | |
|    SARS CoV 2 RNA | | Detected | Not Detected | |

A Detected result is considered a positive test result
for COVID-19. This indicates that RNA from SARS-CoV-2
(formerly 2019-nCoV) was detected, and the patient is
infected with the virus and presumed to be contagious.
If requested by public health authority, specimen will
be sent for additional testing.
CRITICAL VALUE REPORT

Please review the "Fact Sheets" and FDA authorized
labeling available for health care providers and
patients using the following websites:
https://www.questdiagnostics.com/home/Covid-19/HCP/
NAAT/fact-sheet2.html
https://www.questdiagnostics.com/home/Covid-19/
Patients/NAAT/fact-sheet2.html

This test has been authorized by the FDA under an
Emergency Use Authorization (EUA) for use by authorized
laboratories.

Due to the current public health emergency, Quest
Diagnostics is receiving a high volume of samples from
a wide variety of swabs and media for COVID-19 testing.
In order to serve patients during this public health
crisis, samples from appropriate clinical sources are
being tested. Negative test results derived from
specimens received in non-commercially manufactured
viral collection and transport media, or in media and
sample collection kits not yet authorized by FDA for
COVID-19 testing should be cautiously evaluated and
the patient potentially subjected to extra precautions
such as additional clinical monitoring, including
collection of an additional specimen.

Methodology:  Nucleic Acid Amplification Test (NAAT)
includes PCR or TMA

Additional information about COVID-19 can be found at
the Quest Diagnostics website:
www.QuestDiagnostics.com/Covid19

KELLEY,KLINT - CH0643060

Page 1 - Continued on Page 2


Quest
Diagnostics

**Report Status: Final**

**KELLEY, KLINT**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **KELLEY, KLINT**<br><br>**DOB: 09/13/1989    AGE: 31**<br>Gender:    M<br>Phone:    404.635.5100<br>Patient ID: 52091-424<br>Health ID: 8573025581465330 | Specimen:    AL189525W<br>Requisition: 7010017<br><br>Collected:    10/21/2020<br>Received:    10/22/2020  / 00:57 EDT<br>Reported:    10/23/2020  / 06:48 EDT | Client #: 7009707        QATLAT06<br>DR. MARTIN<br>U S PENITENTIARY<br>601 MCDONOUGH BLVD SE<br>ATLANTA, GA 30315-4400 |

| Test Name | Result | Reference Range | |
|---|---|---|---|
| SARS CoV 2 RNA(COVID 19),   QUALITATIVE NAAT | | | AT |
| SARS CoV 2 RNA | DETECTED | NOT DETECTED | |

A Detected result is considered a positive test result for COVID-19. This indicates that RNA from SARS-CoV-2 (formerly 2019-nCoV) was detected, and the patient is infected with the virus and presumed to be contagious. If requested by public health authority, specimen will be sent for additional testing.

Please review the "Fact Sheets" and FDA authorized labeling available for health care providers and patients using the following websites: https://www.questdiagnostics.com/home/Covid-19/HCP/NAAT/fact-sheet2 https://www.questdiagnostics.com/home/Covid-19/Patients/NAAT/fact-sheet2

This test has been authorized by the FDA under an Emergency Use Authorization (EUA) for use by authorized laboratories.

Due to the current public health emergency, Quest Diagnostics is receiving a high volume of samples from a wide variety of swabs and media for COVID-19 testing. In order to serve patients during this public health crisis, samples from appropriate clinical sources are being tested. Negative test results derived from specimens received in non-commercially manufactured viral collection and transport media, or in media and sample collection kits not yet authorized by FDA for COVID-19 testing should be cautiously evaluated and the patient potentially subjected to extra precautions such as additional clinical monitoring, including collection of an additional specimen.

Methodology: Nucleic Acid Amplification Test (NAAT) includes RT-PCR or TMA

Additional information about COVID-19 can be found at the Quest Diagnostics website: www.QuestDiagnostics.com/Covid19.

Physician Comments:

**PERFORMING SITE:**
AT      QUEST DIAGNOSTICS-ATLANTA, 1777 MONTREAL CIRCLE, TUCKER, GA 30084-6802 Laboratory Director: ANDREW N YOUNG,MD,PHD, CLIA: 11D0255931

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

# Bureau of Prisons
## Health Services
## Health Problems

Reg #: 52091-424        Inmate Name: KELLEY, KLINT

### Current

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Impacted cerumen<br>07/23/2018 13:12 EST Holt-Nicholson, T, APN/BC<br>right ear impaction | | ICD-10 | H6120 | 07/23/2018 | Current | |
| Constipation, unspecified<br>09/18/2020 14:31 EST Smith, J NP | | ICD-10 | K5900 | 09/18/2020 | Current | |
| Pain in unspecified joint<br>07/23/2018 12:59 EST Holt-Nicholson, T, APN/BC<br>chronic left shoulder pain | | ICD-10 | M2550 | 07/23/2018 | Current | |
| No Diagnosis<br>07/28/2020 14:28 EST Stephenson, D, Ph.D. | I DSM-IV | | No Dx | 07/28/2020 | Current | |
| Coronavirus COVID-19 test negative<br>10/12/2020 13:30 EST Harris, T, RN/IOP/IDC | | ICD-10 | Z03818- | 10/05/2020 | Current | 10/12/2020 |
| 09/03/2020 17:03 EST Smith, J NP | | ICD-10 | Z03818- | 08/24/2020 | Resolved | 09/03/2020 |
| 08/24/2020 17:03 EST Mitchell, B, NP-C | | ICD-10 | Z03818- | 08/24/2020 | Current | |
| Encounter for screening<br>01/29/2020 13:46 EST Smith, J NP | | ICD-10 | Z139 | 01/29/2020 | Current | |

### Resolved

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Cellulitis, unspecified<br>08/15/2019 11:06 EST Smith, J NP<br>Left arm | | ICD-10 | L0390 | 07/26/2019 | Resolved | 08/15/2019 |
| 07/26/2019 13:33 EST Robinson, Letaya NP<br>Left arm | | ICD-10 | L0390 | 07/26/2019 | Current | |
| Confirmed case COVID-19<br>11/03/2020 13:12 EST Tesh, Ana NP<br>11/3/20 Meets criteria for discharge from isolation | | ICD-10 | U07.1 | 10/21/2020 | Resolved | 11/03/2020 |
| 11/03/2020 10:41 EST Harris, T, RN/IOP/IDC | | ICD-10 | U07.1 | 10/21/2020 | Current | |
| 09/14/2020 08:24 EST Mitchell, B, NP-C | | ICD-10 | U07.1 | 09/03/2020 | Resolved | 11/03/2020 |
| 09/03/2020 17:03 EST Smith, J NP | | ICD-10 | U07.1 | 09/03/2020 | Current | 09/14/2020 |

Reg #: 52091-424

Inmate Name: KELLEY, KLINT

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Quarantine - asymptomatic person in quarantine | | | | | | |
| 11/03/2020 10:41 EST Harris, T. RN/IOP/IDC | | ICD-10 | Z0489-q | 10/05/2020 | Resolved | 11/03/2020 |
| intake quarantine | | | | | | |
| 10/12/2020 13:30 EST Harris, T. RN/IOP/IDC | | ICD-10 | Z0489-q | 10/05/2020 | Current | |
| intake quarantine | | | | | | |
| 09/03/2020 12:58 EST Mitchell, B. NP-C | | ICD-10 | Z0489-q | 09/02/2020 | Current | |
| 08/24/2020 17:03 EST Mitchell, B. NP-C | | ICD-10 | Z0489-q | 08/18/2020 | Current | |

**Total: 9**

EXHIBIT TWO

B.O.P. Denial

12-22-20

To: M.D. Carvajal
Federal Bureau of Prisons Director

It was explained to me I must write to you and request
your considerations concerning The compassionate release.
As you knew The pandemic has hit the prison systems
with extreme force and Theres not much being done to
combat The virus inside The prisons. With a new wave
of Covid on The move and an even more deadly strand
than before, I am at an increased risk due to my
weakened immune system. I hereby request your support
for filing A compassionate release motion That would help
encourage the courts through This pandemic.

Klint Kelley #52091-424
USP Atlanta
P.O. Box 150160
Atlanta, GA. 30315

7th Circuit United States Courthouse
Everett McKinley Dirksen
219 South Dearborn Street.
20th floor
Chicago, IL. 60604

12-3-20

To: Mr. Woods. USP Atlanta (Warden)

I am requesting your considerations for a compassionate release. As you know the virus has impacted all inmates Nationwide in the B.O.P. It has left many severely ill and caused several deaths among inmates and staff as well here in Atl. I am asking you to consider due to my weak immune system. I have contracted the virus twice now once in Pollock LA. and now here in Atl, GA. With A new wave of covid on the move with a more intense strand I fear becoming ILL again and possible death. Thank you for your time and consideration.

Respectfully, Klint Kelley

Klint Kelley #52091-424

**UNITED STATES GOVERNMENT**

# Memorandum

**FEDERAL BUREAU OF PRISONS**
**United States Penitentiary Atlanta**
**Atlanta, Georgia 30315**

December 17 2020

**MEMORANDUM FOR WILLIAM L. WOODS, WARDEN**

FROM:    K. Benson-Connor, Unit Manager /s/

SUBJECT:    **Klint Kelley Reg. No.  52091-424**

After careful review of your request to be released to Home
Confinement/Furlough either under the CARES Act, (First Step Act) or due
to the COVID-19 pandemic, your request is denied due to one or more of
the following reason below. This will not negate you being reviewed for
the Second Change Act under Title 18 3621 (b) for RRC placement/Home
Confinement. While the policy is being update daily, we will automatically
review your through our Sentry roster for appropriate placement if
warranted. Multiple request to staff is not needed for consideration. A
copy of your request and a copy of this memo will be placed in your Central
File for your record.
* The security level of the facility currently holding the inmate,
with priority given to inmates residing in low and minimum security
facilities;
* The inmate's conduct in prison, with inmates who have engaged in
violent or gang- related activity in prison or who have incurred a BOP
violation within the last year not receiving priority treatment under this
Memorandum;
* The inmate's score under PATTERN, with inmates who have anything
above a minimum score not receiving priority treatment under this
Memorandum;
* Whether the inmate has a demonstrated and verifiable re-entry plan
that will prevent recidivism and maximize public safety, including
verification that the conditions under which the inmate would be confined
upon release would present a lower risk of contracting COVID-19 than the
inmate would face in his or her BOP facility;
* The inmate's crime of conviction, and assessment of the danger posed
by the inmate to the community. Some offenses, such as sex offenses, will
render an inmate ineligible for home detention. Other serious offenses
should weigh more heavily against consideration for home detention.




| **Individualized Needs Plan - Program Review (Inmate Copy)** | SEQUENCE: 02074871 |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | Team Date: 01-14-2021 |
| Plan is for inmate: KELLEY, KLINT  52091-424 | |

| | | | |
|---|---|---|---|
| Facility: | ATL  ATLANTA USP | Proj. Rel. Date: | 06-18-2024 |
| Name: | KELLEY, KLINT | Proj. Rel. Mthd: | GCT REL |
| Register No.: | **52091-424** | DNA Status: | CCC05891 / 09-07-2017 |
| Age: | 31 | | |
| Date of Birth: | 09-13-1989 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ATL | BDU ASB 1 | BATTLE DRESS UNIFORM ASSMBLY 1 | 11-23-2020 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ATL | ESL HAS | ENGLISH PROFICIENT | 10-01-2018 |
| ATL | GED HAS | COMPLETED GED OR HS DIPLOMA | 10-01-2018 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ATL | C | ACE MATH & SOLAR SYSTEM | 01-06-2021 | 01-08-2021 |
| POM | C | MONEY AND CONSUMERS | 08-31-2020 | 09-04-2020 |
| POM | C | CAR BUYING TIPS AND SKILLS | 08-31-2020 | 09-04-2020 |
| POM | C | CONSUMER SHU PRE-RELEASE | 08-31-2020 | 09-04-2020 |
| POM | C | RPP 6: ANGER MANAGEMENT SHU | 08-31-2020 | 09-04-2020 |
| POM | C | PLAYBOOK FOR LIFE | 08-10-2020 | 08-14-2020 |
| POM | C | FINANCIAL PLAN SHU PRE-RELEASE | 08-10-2020 | 08-14-2020 |
| POM | C | EMERGENCY SERVICES LANGUAGE | 07-12-2020 | 07-17-2020 |
| POM | C | GOVERNMENT LANGUAGE | 07-12-2020 | 07-17-2020 |
| POM | C | ADVERTISING | 07-12-2020 | 07-17-2020 |
| POM | C | SHU- COMMON FASTENERS | 07-06-2020 | 07-10-2020 |
| POM | C | READING COMPREHENSION | 07-06-2020 | 07-10-2020 |
| POM | C | WRITING BOOK REPORTS | 07-06-2020 | 07-10-2020 |
| POM | C | CAREER PLANNING SHU PRE-REL | 07-06-2020 | 07-10-2020 |
| POM | C | SHU-SMALL ENGINE | 05-25-2020 | 05-29-2020 |
| POM | C | MEDICAL LANGUAGE | 05-25-2020 | 05-29-2020 |
| POM | C | TRANSPORTATION LANGUAGE | 05-25-2020 | 05-29-2020 |
| POM | C | COMMER.DRIVERS LIC/SHU PART 2 | 05-25-2020 | 05-29-2020 |
| POM | C | COMMER.DRIVERS LIC/SHU PART 1 | 05-25-2020 | 05-29-2020 |
| POM | C | MORE FOR YOUR MONEY | 05-11-2020 | 05-15-2020 |
| POM | C | JOB SKILL SHU PRE-RELEASE | 05-11-2020 | 05-15-2020 |
| POM | C | BUDGETING SHU PRE-RELEASE | 04-20-2020 | 04-24-2020 |
| POM | C | RPP 3: CHECKING/SAVING/ATM SHU | 04-20-2020 | 04-24-2020 |
| POM | C | PERSONAL HEALTH | 03-30-2020 | 04-03-2020 |
| POM | C | HOUSING OPTIONS | 03-30-2020 | 04-03-2020 |
| POM | C | MASTER YOUR MONEY | 03-16-2020 | 03-20-2020 |
| POM | C | CREDIT AND LOANS SHU PRE-REL | 03-16-2020 | 03-20-2020 |
| POM | C | LIVING SOBER | 04-08-2019 | 10-01-2019 |
| POM | C | COMMERCIAL DRIVES LICENSE/ACE | 07-20-2019 | 09-14-2019 |
| POM | C | RPP 6: IN/OUT DAD-PARENTING | 02-12-2019 | 04-16-2019 |
| POM | C | VT SEWING AM | 11-13-2018 | 02-20-2019 |
| POM | C | BOP BASICS 101: ORIENTATION | 11-15-2018 | 12-26-2018 |
| POM | C | FOOD PRINCIPLES & PREPARATION | 10-31-2018 | 12-26-2018 |
| POM | C | NATURE'S ASSASSINS | 11-07-2018 | 12-05-2018 |
| POM | C | MARVELS IN SPACE | 11-06-2018 | 12-17-2018 |
| POM | C | HOW TO USE LEISURE TIME-RPP6 | 09-27-2018 | 09-27-2018 |

## Discipline History (Last 6 months)



## Individualized Needs Plan - Program Review   (Inmate Copy)

SEQUENCE: 02074871

Dept. of Justice / Federal Bureau of Prisons

Team Date: 01-14-2021

Plan is for inmate: KELLEY, KLINT  52091-424

| Hearing Date | Prohibited Acts |
|---|---|

*\*\* NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS \*\**

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 11-16-2018 |
| CARE1-MH | CARE1-MENTAL HEALTH | 10-04-2018 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| C19-RCVRD | COVID-19 RECOVERED | 11-03-2020 |
| NO PAPER | NO PAPER MEDICAL RECORD | 09-27-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 06-30-2018 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-27-2018 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 05-13-2019 |
| ED NONE | DRUG EDUCATION NONE | 10-04-2018 |
| NR COMP | NRES DRUG TMT/COMPLETE | 10-01-2019 |

### FRP Details

| Most Recent Payment Plan |
|---|

| **FRP Assignment:** | **COMPLT** | **FINANC RESP-COMPLETED** | **Start: 05-15-2019** |
|---|---|---|---|

Inmate Decision:  **AGREED**     50%          Frequency: **MONTHLY**

Payments past 6 months:     **$0.00**          Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $200.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

*\*\* NO ADJUSTMENTS MADE IN LAST 6 MONTHS \*\**

**Payment Details**

Trust Fund Deposits - Past 6 months:  $ N/A                    Payments commensurate ?   N/A

New Payment Plan:         | \*\* No data \*\* |

### Progress since last review

Inmate Kelley arrived to USP Atlanta via 323 close supervision transfer from FCI Forrest City. Since his arrival inmate has remain clear of disciplinary infractions and is seeking a work assignment.  Completed ACE Math and Solar System, Working in UNICOR

### Next Program Review Goals

Inmate completed ACE Math and Solar system 10 hour course and began employment with UNICOR. Unit Team recommends inmate enroll in Money Management class by November 2020 and complete by the next review in June 2021.

### Long Term Goals

Unit Team recommends inmate Kelley enroll in Property Management by December 2020 and complete by the next review in May 2021. Due to COVID 19 inmate may not be able to enroll/complete by the deadline

### RRC/HC Placement

No.
Management decision - Assessment for RRC placement in accordance with the Second Chance Act will be conducted when you are within 17-19 months of your PRD..

### Comments

Assessment for RRC placement in accordance with the Second Chance Act will be conducted when you are 17-19 months from PRD. Outside of referral time frame for RRC Placement, will refer nearer to your PRD.

4) Personal letter.

To the Courts,

While being incarcerated I have worked many months in The F.P.I./Unicor facilities and learned vocational skills That will potentially land me Job positions upon release. I have participated in as many psychology, cognitive thinking and self help classes as possible to help determine and correct my irrational thinking. I have worked to keep my mind busy and continue to expand my knowledge in all aspects possible to ensure There is NO chance of reeidivism after release. Chance of recidivism for me is less than none considering I will be returning home a father to my first born child, A beautiful baby girl in which I have already missed So much time with.

I am very eager to return home and raise her as a respectful young lady I know she will be. I would like to be there to help take some of the load and stress off my fiancé and family who try their best to help in any way. I will not be a dead beat father who isn't around for his children because he's in prison or on his way back. I will be There to teach Them Morals, To have respect for others, to have gratitude and integrity, To be hard workers and chase dreams but most of all Teach them Love. I will teach Them to Love and support family and friends as I have been supported while incarcerated. I couldn't have asked for a better group of people outside these walls.

This has been the worst and greatest learning experience of my life. I will be going home with A totally new outlook on life. I will show my appreciation by being involved in the community and always lending a helping hand where needed. In a sense I am grateful for this unfortunate period of my life. I has been A major wake up call and shown me the light. I am still

Continued.

Very sorry for the act I committed and the toll it had on the communities and families, mine and others alike. I have been praying I am given another chance to participate in the community and my daughters life sooner than later. I assure you the same mistakes will never happen again. Thank you for your time and considerations.

Respectfully, Klint Kelley
Klint Kelley #52091-424

1) Safety Plan

My personal safety plan would consist of doing my best to maintain Social distancing while maintaining employment to support myself and family. I have my own home which will make social distancing an easy accomplishment. I will be working for a close friend of many years named Nicky Retig who owns and manages his Remedeling business. I will be working with a small group of men which will help ensure safety. Also, working Construction requires: gloves, masks and eye protection at all times which help combat Covid-19.

2) Release Plan

If granted my release plan will consist of working and encolling at the Technical Trade college near my home to further my education, start a career and better support my family and community. I have many family members, friends and neighbors who are more than willing to pitch in to ensure my Success upon re-entry. They have been by my side during my incarceration and certainly will continue to support me with immense efforts. My #1 goal will be raising my 2yr old daughter to be a conscentious young lady and also be a positive role model for my 8yr old step son.

Personal Statement Continued.

Upon testing (+) on October, 21st 2020 at USP Atlanta I was moved to a "Quarantine unit" where I was able to interact with other inmates who had tested (+) previously and others who were possibly exposed but had tested (−). All along in this "Quarantine unit" The on duty officers would walk about without face coverings on and pass out food trays without gloves. This is very unsettling due to the rapid spread and growth in numbers becoming ILL daily. The B.O.P. is not taking into consideration the inmates have nowhere to hide and are limited to the P.P.E. necessary. I have been doing all I can to prevent getting sick a third time with covid but under these conditions it's nearly impossible.

### 3) Personal Statement

Personally, from an inmates perspective, This virus has impacted us a populous as bad if not worse than others. There is no safe place for us. We have been confined to tight quarters that are overpopulated. The prison systems have been very insufficient handling the virus. Many staff members continue to avoid wearing the proper PPE which has resulted in rapid spread and even deaths here at USP Atlanta.

I have contracted the virus twice, once at my previous facility and again in Atlanta. Both times I feel have been due to poor efforts made by the B.O.P. staff. I believe many cases mine included could have been prevented if adequate soap, hand sanitizer, masks, gloves and other precautions were implemented throughout this pandemic. I have been using the same mask for months and although I wash it daily I feel the B.O.P. should be providing new ones at least weekly or Bi-weekly.

The virus is just recirculating throughout the prisons. On 12-14-20 Atlanta USP experienced another outbreak with new cases. The very same day the institution moved approximately 20 inmates from one unit into the unit I am housed in. These 20 inmates could possibly have been infected with Covid, They were not tested prior to moving and are now in contact with hundreds of others they were not in contact with before. Our phones, computers, Tables and other frequently touched surfaces are not being disenfected as needed.

A doctor/nurse here in Atlanta USP recently tested (+) for covid after interacting with many inmates and other staff. Proper screening and Test are not being applied to staff to ensure they don't introduce the virus to the institutions.

# EXHIBIT Three

# Letters of Support
# From Family and Friends



To whom it may concern,

My name is Matthew Jennings I have known Mr. Klint Kelley for
going on eleven years now I would like to acknowledge that when the
time comes that klint gets out of prison that I will do everything
within my means to offer him assistance including but not limited to
helping him find a job helping with transportation to and from work
and if needed a place to stay until he gets back on his feet in the years
I have known klint I have know him to be an honest man with
outstanding character and a man that holds integrity to the highest
standards I have been a recipient of klints graciousness and I can say
without a doubt that he is one of the most generous and helpful men I
have come across the reality of being human is we are destined to
make mistakes from the time we are born we are set up for failure we
live our lives in constant stress and sometimes overwhelming
pressure if klint is truly guilty of the charges that were brought
against him I know in my heart that it was a mistake or moment of
bad judgement brought on by stress and hardships not an outright
willingness to do wrong I am glad to be able to call klint a brother
and I pray that this letter may shed some light on the man that he
truly is

Sincerely,

Matthew  Jennings
Matthew Jennings
12/29/2020

To Whom it may concern:

My name is Heaven Cox. I have been a friend of Klint Kellys for many years. I am wrighting this letter to express my willingness to help Klint in any way upon his release. I am willing to help with support and transportation to work or similar sorts. This is what friends and family are for. For more information from me, my info is provided below.

Sincerely,
Heaven Cox

217 Bristol ln.
Hot Springs, AR
71913

1 501·655·0846

Klint Kelley

To whom may concern, my name is Jonathon Wise and I've known Klint Kelley for 15 years and he has always been to drop what he is doing to help anyone out. With this whole covid thing going on, and him catching it twice it would be better for him to be able to get released. He has a lot of friends and family to support him to so. I personally will do anything to help Klint. Transportation, place to live, anything. He has always been there for me and I will be there for him.

Sincerely

Jonathon

To: Whom it May Concern

Klint Kelly is one of the most thoughtful and hard working guys I have ever been around. Klint would give anyone that needed it a helping hand.

Today I write this letter to let Klint and whoever needs to hear it, That I would and will help Klint Kelly out in anyway I possibly can. If he needs a ride somewhere, a place to stay or just maybe a meal or words of encouragement.

Klint Kelly is a friend of mine and always will be

God Bless
Kevin Ballard

To whom it may concern. My name is Nicky Rettig. My number is 501-539-0315. I have been friends with Klint Kelley for over 11 years. If you grant him to get out, I will provide him with work as I own my own business. He has worked with me before and is a hard worker and dependable. I can also provide him a house to live in as I have a spare bedroom. He is a great guy, he's like my brother, blood couldn't make us any closer. Mr. Kelley has a strong support system out here. He has a lot of people that care for him, whatever he needs we will make it happen. I also have transportation and would be able to make sure we got him wherever he needs to go. Feel free to give me a call or anything if you need to. Have a blessed day.

Nicky Rett

Phone # (501) 539-0315

12 -28-20

To whom it May concern, I Kyah Williams have Known Klint Kelly for about 10 years. We Meet in high school and then I Ended up becoming good friends with his sister. We Stayed in touch Mainly because I started babysitting his nephew. The Past 10 years Klint has been a great Uncle and Friend. He is engaged and has a daughter with My good friend Ashley from School. IT would be Wonderful to see him as a father and husband. When he gets out I will be here for him in any way needed, Transportation or Support.

Thank you

Kyah Williams

McKenzie Trammel
[illegible] Highway 87
Malvern, AR 72104

501-463-0367

To whom it may concern,

I an writing this letter in regards to inmate 52091424, Klint Kelly and the Compassionate Release program based on the Covid 19 pandemic. From my understanding, Klint has tested positive for Covid 19 twice this year. I don't know if Klint is a high risk factor, has an immune system disorder (I am not a doctor, just repeating information that has been reported on Science Mag. or and [redacted] CDC) or if he is in a high exposure enviroment. No matter the case, losing Klint would have a devastating impact on dozens of people.

I have known Klint for over 10 years. I know his girlfriend, Ashley James and their baby. I am the Jobs for Arkansas Graduates, JAG, Specialist at Malvern High School in Malvern, Arkansas I also help my husband, Blake Trammel, run Trammel Home Improvement, LLC. My husband and I would be more than willing to help Klint with housing, transportation, and employment. We have a small efficiency one room appartment on our property as well as a small rent house located in Malvern, Arkansas. We could employ Klint as an electrical apprentice and sponsor his electrical apprenticeship program held at the local college.

Feel free to contact me with any questions or concerns.

Sincerely,

McKenzie Trammel

To Whom. it may concern.

My Name is Blake Edward Trammel. I have personally known Mr. Klint Kelley for more than 10 years, And if Mr. Kelley is granted release, I personally will give him full time employment, as I own Trammel Home Improvement, and I can also offer him a place to stay. Mr. Kelley has got many other great people throughout the Hot Springs & Garland County districts that will gladly help him in any way possible.

Thank you

Blake Trammel – 501-463-1615
Trammel Home Improvement
501- 232-7288

To whom it may concern,          December 28th, 2020

Im writing this letter in regards to my dear friend, Klint Kelly (inmate #52091-424). Klint has contracted the Coronavirus twice since he's been incarcerated and we are all extremely concerned. Despite the mistakes Klint has made in the past - I can honestly say he was a productive member of society. He has a two year old daughter that he's only gotten to visit with a handful of times.

Klint has a home (and a mortgage) in Malvern, Arkansas and if Klint gets released we would all be more than willing to provide him with transportation and make sure he has the tools to succeed. Please consider releasing Klint - so many people would be forever grateful!

Sincerely,

Jessica Carrington

To: whom This my Concern;
My Son Klint Kelley #52091-424

Please help to Protect My Son from Covid
He has tested Positive Twice.
I very concerned about his Health
without proper Care & Nutrition he could
contract the viris Again.
I'm willing to provide him a
Ride home to Malvern AR to his
House which is a 8 hour drive.
I pray for his Release and when
he is He will be provided all the
prevention Material to prevent the
Spred with Masks, Sanitizer gloves
Social distanting.
Klint has A couple of Jobs lined
up for him and is willing To Always
work to provide him and his
wife to be Ashley Bates and for his
daughter Kyndall 2yrs 0d.
Klint has always been A person that
would drop everything To Help Anyone.
and is deeply Missed

Thanks for Taking your Time
Donna Cook

Donna Cook
109 Lily St
Hot Springs AR
71901
501-655-2653

December 28, 2020

To whom it may concern.

This letter is regarding the safety of inmate number 52091-424, Klint Kelley. I am aware of the intensity of Covid-19 inside the prison. Klint Kelley tested positive twice this year and I fear it isn't safe for him to be living inside the prison. If we lost Klint it would be devastating for many people, including myself and his only child our daughter, who is only 2 years old. Prisons have very poor ventilation systems and are extremely over populated. I believe it would be much safer for Klint to live outside of the prison. If Klint was granted to be released I would be more than willing to drive the 8 hours to pick him up and drive him to Arkansas. He has his own house in Malvern, AR. Therefore it would be easier for him to have social distancing. Many of his family and friends, including myself, can provide for him masks, gloves, soap and anything else he may need. I can provide transportation to wherever he needs to go as far as work, etc. I have known Klint for 15 years and we have been engaged since 2016. He has always been a kind, helpful man

to anyone who crosses his path. He has always been hard working and would be a great asset to the community. He is always helping someone in need, even a stranger broke down on the side of the road. We would be attending our church Apostolic Faith Tabernacle in Peary, Arkansas. He has two very close friends that are like family to us, they individually have their own business' and he would be hired immediately. With either job he would only be working with a few other people. Another way for him to practice social distancing. We would be put at ease for a better safety for Klint to be home outside of the prison. It would be wonderful to have him home to help raise and provide for his daughter.
Thank you for your time.

Sincerely, Ashley Bates

501-282-0021
431 Arkridge Rd.
Hot Springs, AR
71913

# EXHIBIT Four

# Personal Certificates



# Arkansas High School Diploma

## Kim Kelley

has demonstrated the prescribed proficiency and has fulfilled the requirements of the American Council on Education for issuance of a high school diploma. The Recipient has successfully completed the General Educational Development Test in the areas of

Language Arts Reading

Mathematics

Science

Social Studies

Writing

Given on this 15th Day of May A.D. 2018

This Arkansas High School Diploma is administered in compliance with the regulations of the Arkansas Department of Career Education.

High McDonald, Chairman
Career Education and Workforce
Development Board

Charisse Childers, Ph.D.
Director, Arkansas Department of Career Education

*Certificate of*

# COMPLETION

FCI
Pollock, Louisiana

Klint Kelley
REG#52091-424
successfully completed
all Turning Point Modules
April 20, 2020



D. Stephenson, Ph. D.
Staff Psychologist



# Certificate of Recognition

THIS CERTIFICATE IS AWARDED TO

## KLINT KELLEY 52091-424

FOR THE SUCCESSFUL COMPLETION OF THE

V.T. SEWING CLASS ON    02/20/2019

Awarded by

Tuesday, February 26, 2019

Date



# Certificate of Recognition

THIS CERTIFICATE IS AWARDED TO

KLINT KELLEY 52091-424

FOR THE SUCCESSFUL COMPLETION OF THE

V.T. SEWING CLASS ON _____ 02/20/2019 _____

Awarded by

Tuesday, February 26, 2019

Date

# Certificate of Completion

*Is presented to*

## Klint Kelley

In recognition for the successful completion of

### Inside – Out Dad

An Evidence-Based Parenting Course at FCI Pollock

April 16, 2019

C. Rachal, ASOE

L. Burnett, RPP Coordinator

# Certificate of
# COMPLETION

FCI
Pollock, Louisiana

## Klint Kelley
### REG#52091-424

has successfully completed
Anger Management Group
November 8, 2019

D. Stephenson, Ph. D.
Staff Psychologist



# Certificate of Completion

## Kelley, Klint
### Reg#: 52091~424

has successfully completed the
Non~Residential Drug Abuse Program



C. Jackson, DTS

October 1, 2019

DATE

# Certificate of Completion

FCI
Pollock, Louisiana

**Klint Kelley**
REG# 52091-424
has successfully completed
Basic Cognitive Skills Group
August 21, 2019



D. Stephenson, Ph. D.
Staff Psychologist

# Certificate of Completion

*Is presented to*

## Klint Kelley

In recognition for the successful completion of

## Commercial Drivers' License

An Adult Continuing Education Course at FCI Pollock

September 14, 2019

L. Burnett, RPP Coordinator

C. Rachal, ASOE

# CERTIFICATE

For completion of the

## Beginner Spin Class

Awarded To

*Kelley*   #52091-424

December 24, 2018

**FCI Pollock Recreation**



# Certificate of Completion

Presented To

*Klint Kelley*

In recognition for the successful completion of

## Food Principles & Preparation

An Adult Continuing Education Program at FCI Pollock

December 26, 2018

L. Burnett, RPP Coordinator

C. Rachal, ASOE

# Certificate of Completion

Presented To

## *Klint Kelley*

In recognition for the successful completion of

### *BOP Basics 101*

A Release Preparation Program at FCI Pollock

December 26, 2018



L. Burnett, RPP Coordinator

C. Rachal, ASOE

# Certificate of Completion

Presented To

## *Klint Kelley*

In recognition for the successful completion of

### *Nature Assassins*

An Adult Continuing Education Program at FCI Pollock

December 5th 2018



L. Burnett, RPP Coordinator

C. Rachal, ASOE

©Teacher Created Resources

# Certificate of Completion

Presented To

*Klint Kelley*

In recognition for the successful completion of

*Marvels of Space*

An Adult Continuing Education Program at FCI Pollock

December 17th 2018

L. Burnett, RPP Coordinator

C. Rachal, ASOE



© Teacher Created Resources

February 1, 2021

To Whom It May Concern:

I am writing this correspondence together with my wife Dale on behalf of our nephew, Prisoner Klint Kelly 52091-424 presently incarcerated in Atlanta, GA. KELLEY

We believe that Klint is basically a good person and he has served almost four years of his sentence. His wife was pregnant at the time of his incarceration and he his not seen his daughter in over a year due to the lockdown.

We are asking for your compassion and release of Klint Kelley due to the covid virus and other factors. We do not believe that he is safe living in prison. We believe our nephew is a person of good character who made some bad decisions that led up to his imprisonment. We also pledge to support him in any way we are able to insure his return to productive society.

Sincerely,

Dale & Ed Ward



04/15/2021-9

*Legal Mail*

Klint Kelley Reg. No. 52091-424

U.S.P. Atlanta

P.O. Box 150160

Atlanta Ga.

30315

Everett McKinley Dirksen

United States Courthouse

20 th. Floor

Chicago IL.    60604



USP ATLANTA
601 MCDONOUGH BLVD SE
ATLANTA, GA 30315
DATE __4-5-21__

The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has been neither
opened nor inspected. If the writer raises a question or problem
over which this facility has jurisdiction, you may wish to return the
material for further information or clarification. If the writer encloses
correspondence for forwarding to another addressee, please return
the enclosure to the above address.

RECEIVED
APR 15 2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT